### THE PRUDENCE. THE NORFOLK. THE BARGE NO. 14.

#### (District Court, E. D. Virginia. June 24, 1912.)

COLLISION (§ 105*)—EVIDENCE—WEIGHT—SUFFICIENCY.

On libel for damages sustained in collision in the Elizabeth river between a barge and a car float, evidence *held* to show that the collision was caused by negligence of the steam tug which was towing the barge in cutting loose her tow and proceeding to anchor the same, under such circumstances as to cause it in the then condition of the wind and weather to in effect occupy the entire channel, that the barge was at fault for failing to have and maintain proper anchor lines, and that the car float and tug which was towing it were free from fault.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 105.*

Collision with or between towing vessels and vessels in tow. See note to The John Englis, 10 C. C. A. 581.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Libel by John Andrews, master of the barge Ella A. Dempsey, against steam tug Prudence, steam tug Norfolk, and Barge No. 14. Libel sustained.

John W. Oast, Jr., of Norfolk, Va., for libelant.

Edward R. Baird, Jr., of Norfolk, Va., for steam tug Prudence.

Floyd Hughes and Thomas H. Willcox, both of Norfolk, Va., for tug Norfolk and Barge No. 14.

WADDILL, District Judge. On the night of the 12th of November, 1911, the barge Ella A. Dempsey was in collision with car float No. 14 of the New York, Philadelphia & Norfolk Railroad Company, in the waters of the Elizabeth river, about three-eighths of a mile south of the Virginian Railway piers. The Dempsey was one of four barges in tow of the steam tug Prudence, en route from Baltimore to Norfolk, and the car float was in tow of the New York, Philadelphia & Norfolk Railroad Company's tug Norfolk, en route from Cape Charles to Norfolk, loaded with some 28 cars. The Dempsey was the rear of the four barges in the tow, was light, and the other three loaded. The barge Pennsylvania was the third barge in the tow, and next to the Dempsey. Both the car float and the barges were being towed on hawsers of the usual length in those waters. The night was dark and stormy, the wind blowing strongly from the northwest, and the point of collision an exposed one, especially with the wind from that quarter, and of the velocity then existing. The barge and car float came together starboard to starboard, the float striking the Dempsey about amidships, and scraping her aft, causing considerable injury, tearing away her stem post, her rudder post, and rudder shoe.

The libel was filed by the master of the Dempsey against the Prudence, the tug Norfolk, and Barge No. 14, commonly called a car float. The case of the Dempsey, briefly, is that the Prudence finding it impracticable, on account of the weather conditions, to proceed up the harbor with its tow, when passing Sewell's Point, signaled to shorten hawser preparatory to anchoring; that a short time thereafter, at a point, as is claimed, to the eastward of midchannel, and some three-eighths of a mile above, and to the southward of, the Virginian Railway piers, the collision occurred. The barges were cut loose, and the first two anchored, with anchor lights up, and the Pennsylvania and Dempsey were engaged in anchoring at the time. All of the barges were anchored to the eastward of midchannel, and further out from the channel as they tailed from the tug; the Dempsey being inshore from the eastward line of the channel some 700 or 800 feet. The captain of the Dempsey admitted hearing the signal to prepare to anchor, but not the one to anchor, and also admitted that at the time of the collision the barge had been cut loose from the tug, though the Dempsey was still made fast to the Pennsylvania, ready to anchor, and at the time that her running lights, including the white light aft, were still burning, that no anchor light was up, and that she had been driven round by the force of the wind and tide,

so as to be heading northwest, or down stream. It was while in this position, and many feet to the eastward of the channel, that the Prudence and the Dempsey contend the collision occurred by the car float attempting to pass the Dempsey inshore, scraping her from amidship on her starboard side, and with the result as above indicated.

The Norfolk's contention is that at the time of the collision she was navigating on her regular course up the western side of the channel; that her navigators saw the lights of a tug some one and a half to two points on her starboard bow, and three miles away; that they were white lights, indicating that they were going ahead, and were to the westward of the channel; that it was impossible to tell whether they were actually moving or not; that no material change was made in the position of the tow ahead after it was observed until the time of the collision, and that her navigators made no change in her course, believing that she was traveling a safe distance from the tow, while the latter was apparently proceeding to the westward of midchannel, and outside of the buoys marking the line of the channel; that they first saw the Dempsey in the dark, without lights, and in such close proximity to the Norfolk as to make it impracticable to stop her tow, or do more than put her wheel hard astarboard and stop her engines, which was done, with a view of lightening as far as possible, the effects of the collision.

Witnesses from the Dempsey and the three barges with her in tow, the Prudence and the Norfolk and car float, were examined, and gave their views as to the manner and circumstances of the collision, and it may be said that, as between them on some of the material questions involved, there is an apparent hopeless conflict in the testimony, though doubtless they all gave what they believed to be correct accounts of the occurrence, and which in many respects is quite as accurate as might be expected, taking into account the darkness and prevalence of the existing storm. The most important point in issue, and as to which there is the greatest conflict, and one that is necessary to be solved, is as to where the collision occurred, whether as contended for by the Prudence and the Dempsey, well to the eastward of the channel, or as maintained by the Norfolk, on the westward line of the channel. After much consideration on this subject, the opinion of the court is that the collision did not take place as contended for, some 700 or 800 feet to the eastward of the eastern line of the channel, as libelant claims. If it did, all the other questions in the case would be easy of solution, since the Norfolk could not by any possibility escape liability, if with a tow of the character in hand, she was navigating as contended by the libelant, and ran into the tow of the Prudence, whether actually anchored, or in course of being anchored. To have so navigated entirely outside of the channel, and the usual track of vessels of her character, ascending the river, under the then condition of wind and weather, would have been highly improper and grossly reckless and negligent.

In the view taken by the court, the respective tows were at the

197 F.—31

time of the collision, and shortly prior thereto, approximately in the positions contended for by the Norfolk—that is to say, that the latter vessel was navigating to the westward side of the channel, and that the Prudence and her tow had been so proceeding, and that, at the time of attempting to anchor, the Dempsey was cast loose on the westward side of the channel and blown across the channel over to the eastern side thereof, and while thus adrift, and occupying the channel, the collision in question occurred. It is difficult to determine precisely how the accident happened, but, having in view the character of injury to the Dempsey's rudder post, rudder, and rudder shoe, it is, in the judgment of the court, more likely to have occurred by the Norfolk's hawser fouling that of the Dempsey, causing her to swing round, throwing her starboard side in collision with that of the car float, then following the Norfolk, than that it had drifted around and was heading down stream, as claimed by libelant. In fact, libelant's view cannot be taken at all as to how the accident occurred, having any sort of regard to the intelligent navigation of those in charge of the Norfolk, and the car float, who were experienced seamen, and engaged daily in traversing those waters.

The conclusion of the court is (1) that the collision came about as the result of the negligence of the Prudence in cutting loose her tow, and proceeding to anchor the same under such circumstances as to cause it in the then condition of the wind and weather, to, in effect, occupy the entire channel, and which was a distinct fault on her part; (2) that the Dempsey was at fault for the failure to have and maintain her proper anchor lights, while made fast to another vessel, and occupying the channel; (3) that the steamer Norfolk and car float No. 14 should be held free from fault, since they were only proceeding on their regular course up the western side of the channel, and had no right to anticipate that the same would be obstructed by other shipping therein, without proper signal or warning of its presence.

It follows from what has been said that a decree may be entered dismissing the libel as to the Norfolk and the car float, and apportioning the damages between the Prudence and the Dempsey, with costs to the Norfolk and car float against the Prudence and the Dempsey, and, as between the latter two vessels, to be divided between them.